**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | | |
|---|---|---|
| BRIAN COWAN, DALE DEFORD, | ) | |
| ISSIAH LAIRDS, KENNETH DIRKSON, | ) | No. 2:16 CV 1102 |
| and ALTON ANTRIM, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF KENOSHA, | ) | |
| WISCONSIN, | ) | |
| | ) | |
| Defendant. | ) | Jury Demand |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,
DECLARATORY JUDGMENT AND OTHER INJUNCTIVE RELIEF**

Plaintiffs BRIAN COWAN, DALE DEFORD, ISSIAH LAIRDS, KENNETH

DIRKSON, and ALTIN ANTRIM individually, by their undersigned attorneys,

complain against the Defendant City of Kenosha, Wisconsin, as follows:

**Nature of the Case**

1.     This is an action pursuant to 42 U.S.C. §1983 and 28 U.S.C. §2201

challenging the constitutionality of certain provisions of Section 11.033 of the

Municipal Code of the City of Kenosha, Wisconsin (2011), titled "Sexual Offender

Residency Restrictions," (the "Ordinance"). A copy of the Ordinance is attached

hereto as Exhibit A. Plaintiffs challenge the restrictions in the Ordinance that

prohibit sex offenders from residing in certain locations within the City of Kenosha.

Plaintiffs contend that certain of these restrictions violate the Ex Post Facto Clause

and the Fourteenth Amendment of the United States Constitution.

In particular, Plaintiffs challenge the following provisions of the Ordinance:

1

(1)     **§11.033 (C)(1)(c)**: This provision prohibits Designated Offenders[1] from establishing a Permanent Residence or Temporary Residence[2] within a six (6) block radius of an existing Permanent Residence or Temporary Residence of another Designated Offender;

(2)     **§11.033 (C)(1)(a) and (b)**: These two provisions set forth the distances that Designated Offenders are permitted to live from "Prohibited Locations."[3] The applicable distance differs based on whether the offender was placed in his or her residence by the Wisconsin Department of Corrections ("DOC"). In particular, §11.033 (C)(1)(a) prohibits Designated Offenders from establishing a Permanent or Temporary Residence within two thousand and five hundred feet (2,500') of a Prohibited Location when they are not placed in their residence by the DOC, while subsection §11.033 (C)(1)(b) prohibits Designated Offenders from establishing a Permanent or Temporary Residence within five hundred feet (500') of a Prohibited Location when they are placed in their residence by the DOC;

(3)     **§11.033 (B)(6)**: This provision defines a "Prohibited Location" to include a "place of worship" and thus prohibits Designated Offenders from establishing a Permanent or Temporary Residence within either

_____

[1]     Sec. B(2) of the Ordinance defines "Designated Offender" as follows:

any person who is required to register under Section 301.45, Wisconsin

any person who is required to register under Section 301.45, Wisconsin Statutes, for any sexual offense against a child, or any person who is required to register under Section 301.45, Wisconsin Statutes, and who has been designated a Special Bulletin (SBN) sex offender pursuant to Sections 301.46(2) and (2m), Wisconsin Statutes.

[2]     Sec. B(4) of the Ordinance defines "Permanent Residence" as "a place where the Designated Offender lodges or resides for fourteen (14) or more consecutive days." Sec. B(5) of the Ordinance defines "Temporary Residence" as "a place where the person abides, lodges or resides for a period of fourteen (14) or more days in the aggregate during any calendar year and which is not the person's permanent address; or a place where the person routinely abides, lodges or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and which is not the person's Permanent Residence."

[3]     Sec. B(6) of the Ordinance defines "Prohibited Locations" as follows:

any school property, licensed daycare center, park, trail, playground, place of worship, or any other place designated by the City as a place where children are known to congregate.

2

five hundred feet (500') or two thousand and five hundred feet (2,500') of a "place of worship," the applicable distance again depending on whether the offender was placed in his or her residence by the DOC; and

(4) **§11.033 (B)(6)**: This provision defines a "Prohibited Location" to include "any other place where children are known to congregate" and thus prohibits Designated Offenders from establishing a Permanent or Temporary Residence within either five hundred feet (500') or two thousand and five hundred feet (2,500') of a "any other place where children are known to congregate," the applicable distance again depending on whether the offender was placed in his or her residence by the DOC.

Plaintiffs seek temporary and permanent injunctive relief, as well as declaratory relief, on the grounds that these four subsections of the Ordinance are, individually and in combination, unconstitutional on their face and as applied. Plaintiffs also seek nominal and compensatory damages for the injuries associated with the deprivation of their constitutional rights.

## Jurisdiction and Venue

2.    Jurisdiction is proper in this court pursuant to 28 U.S.C. §1331 because this action arises under federal law. Specifically, this case arises under 42 U.S.C. §1983 and alleges violations of the Ex Post Facto Clause and Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Wisconsin.

4.    Declaratory relief is authorized under 28 U.S.C. § 2201. A declaration of law is necessary and appropriate to determine the respective rights and duties of parties to this action.

3

## The Parties

5. Plaintiff Brian Cowan is a 58-year-old resident of Kenosha, Wisconsin. He has resided in Kenosha since 1987. Plaintiff Cowan is a Designated Offender under the Ordinance.

6. Plaintiff Dale DeFord is a 58-year-old resident of Kenosha, Wisconsin. He has resided in Kenosha his entire life. Plaintiff DeFord is a Designated Offender under the Ordinance.

7. Plaintiff Issiah Lairds is a 61-year-old homeless resident of Kenosha, Wisconsin. He has resided in Kenosha since 2003. Plaintiff Lairds is a Designated Offender under the Ordinance.

8. Plaintiff Kenneth Dirkson is a 69-year-old resident of Pleasant Prairie, Wisconsin. He has lived in Pleasant Prairie since early 2015. Plaintiff Dirkson is a Designated Offender under the Ordinance.

9. Plaintiff Alton Antrim is a 60-year-old resident of Pleasant Prairie, Wisconsin. He has lived in Pleasant Prairie since 2013. Plaintiff Alton Antrim is a Designated Offender under the Ordinance.

10. The City of Kenosha is a municipal corporation located in Kenosha County, Wisconsin. Defendant is governed by an elected Mayor and Common Council, which, among other things, is empowered to enact ordinances under its home rule authority.

4

**The Particular Provisions of the Law
at Issue in this Lawsuit**

11.     Four of the challenged provisions of the Ordinance — §11.033 (C)(1)(c) (the six-block radius provision), §11.033 (C)(1)(a) and (b) (which prohibit Designated Offenders from living within 500' or 2,500' of Prohibited Locations), and §11.033 (B)(6) (which defines any place of worship as a Prohibited Location) — violate the Ex Post Facto Clause of the U.S. Constitution, individually and/or in combination, because they apply retroactively and so severely disable or restrain the ability of Designated Offenders to reside in Kenosha as to amount to a penalty and effectively serve as *de facto* banishment from the City.

12.     In addition, §11.033 (C)(1)(c) (the six-block radius provision) and §11.033 (B)(6) (which defines any place of worship as a Prohibited Location) also violate the Fourteenth Amendment of the U.S. Constitution because they are irrational and do not serve to protect the safety of the public. Concerning §11.033 (C)(1)(c) (the six-block radius provision), there is no rational basis for not allowing Designated Offenders to live within six blocks of one another. Concerning §11.033 (B)(6) (which defines any place of worship as a Prohibited Location), there is no rational basis for prohibiting Designated Offenders from living near places of worship (in contrast to schools, daycare centers, playgrounds or other places where children congregate), if the rationale for the restrictions is to limit Designated Offenders' interactions with children as a means to protect children from harm.

13.     Sections 11.033 (C)(1)(a) and (b) of the Ordinance (which distinguish how far a Designated Offender must live from a Prohibited Location depending on

5

whether the offender was placed by the DOC or not) violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution because there is no rational basis for drawing this distinction between the two classes of offenders.

14.     Finally, §11.033 (B)(6) violates the Fourteenth Amendment of the United States Constitution because the phrase "any other place where children are known to congregate" fails to provide sufficient clarity to allow a person of ordinary intelligence to understand and discern precisely what conduct is prohibited and fails to provide sufficient guidance to law enforcement officials and prosecutors, which thereby encourages arbitrary enforcement. As such, this provision violates the void-for-vagueness doctrine under the Fourteenth Amendment.

## Factual Allegations

**Brian Cowan**

15.     Cowan is a 58-year-old resident of Kenosha who pled guilty in 1999 to one count of First-Degree sexual assault of a minor (Wisc. Stats. §948.02(1)). As a result of his conviction, he is a Designated Offender under the Ordinance.

16.     Cowan was sentenced to eight years in prison and 20 years probation.

17.     Cowan was released from prison in 2004 and is currently on probation.

18.     Cowan currently lives in Kenosha and has lived there since 1987, with a few months interlude in California during this period of time. He currently resides at 5130 21st Ave., a four-unit apartment that has been converted from single-family home. He pays rent of $675 per month to live there.

19.     Cowan is presently not working and receives social security payments

in the amount of $773 per month, plus food stamps in the amount of $192 per month.

20.     Cowan currently attends school at Gateway Technical College in Kenosha and is studying geothermal heating.

21.     Cowan has lived in his current residence since October 2015.

22.     Cowan's current residence is non-complaint with the requirements of the Ordinance because it is located one block away from a church (*e.g.*, the Reformation Church, located at 1920 52nd St.) and one block away from a school (e.g., Friedens Elementary, located at 5038 19th Ave.)

23.     Cowan's address is well-known to enforcement authorities, since (1) he is legally required to register the address with the Wisconsin Sex Offender Registry Office; (2) the address is publicly listed as Cowan's residence on the Wisconsin State Sex Offender Registry (available at http://doc.wi.gov/community-resources/wi-sex-offender-registry); and (3) Cowan's probation agent routinely does home visits to his residence (at least once a month).

24.     Cowan lives in fear that at any time he could be forced to move and/or returned to prison for living in violation of the Ordinance's residency restrictions.

25.     Indeed, prior to living at his current address, Cowan lived in a two-unit building at 26th and 67th Street in Kenosha. He lived with his roommate, Dennis Knipple, a Designated Offender under the terms of the Ordinance, who was also a Special Bulletin Notice (SBN) offender. Cowan and his roommate lived in the upstairs unit. A woman and her four-year-old child lived in the downstairs unit.

7

Cowan lived at this particular location with his roommate for three months

26. This particular residence was also non-complaint with the requirements of the Ordinance because §11.033 (C)(1)(c) of the Ordinance prohibits any Designated Offender from living within six blocks of another Designated Offender, but Plaintiff Cowan and his roommate were both Designated Offenders.

27. The enforcement authorities were fully aware of Cowan's and his roommate's living arrangements. Indeed, it was probation officers themselves who actually placed Mr. Knipple to live with Plaintiff Cowan, thinking that Plaintiff Cowan would be a good influence on Mr. Knipple.

28. In October 2015, after the woman downstairs complained to the police about Plaintiff Cowan's roommate, the enforcement authorities forced Plaintiff Cowan to move within three days, whereupon Cowan moved to his current non-compliant address.

29. This incident is typical of the enforcement practices in Kenosha, where the authorities (1) allow Designated Offenders to move from one non-compliant address to another; and (2) haphazardly and randomly enforce the Ordinance's residency restrictions, thereby leaving Designated Offenders subject the whim of authorities' arbitrary enforcement practices and in a constant state of fear that they will be forced to move at a moment's notice and/or returned to prison for violating the Ordinance's residency restrictions.

**Dale DeFord**

30. Dale DeFord is a 58-year-old resident of Kenosha who was found guilty

in 2004 of one count of Child Enticement in Wisconsin (Wisc. Stats. 948.07(6)).

31.     DeFord has been designated as a "Special Bulletin" offender and as such is deemed a Designated Offender under the Ordinance.[4]

32.     For his 2004 offense, DeFord was sentenced to one year in prison and 10 years probation.

33.     Due to probation violations in association with his 2004 offense, DeFord was last released from prison in 2013.

34.     DeFord currently lives in Kenosha at 2932 73rd Street, in Unit #4 on the second floor of a four-unit house. No other designated offender lives in the building. He pays $600 a month to live there. He has lived there since February 2014.

35.     DeFord does not work; he receives social security disability payments in the amount of $951.00 per month, plus food stamps in the amount of $144 per month.

36.     DeFord lives at his current location because there was, and continues to be, no other available apartments in Kenosha that are compliant with the Ordinance.

37.     Prior to moving to this location, DeFord searched for five months for an apartment in Kenosha and called at least 100 people with apartments for rent, but not one other apartment was available to him either (1) because the landlord

---

[4]     On information and belief, Kenosha police enforce the Ordinance most strictly against Special Bulletin Offenders ("SBNs"), but even with regard to SBNs, they do not enforce the Ordinance consistently.

refused to rent to a sex offender or (2) the apartment was non-complaint with §11.033 (C)(1)(c) of the Ordinance due to the fact that other Designated Offenders already lived within a six-block radius of the proposed apartment.

38.     But for the Ordinance's six-block restriction and Prohibited Locations restrictions, DeFord would have been able to find cheaper housing. Indeed, prior to moving to his current location, he had sought to live in an apartment located at 65th St. and 7th Ave. for $450 per month, but it was non-compliant due to the six-block restriction.

39.     When DeFord moved to his current address two and a half years ago, it was the only apartment he could find in compliance with the Ordinance's restrictions. Now, in fact, DeFord's apartment is in non-compliance with the Ordinance. That is because numerous Designated Offenders have been allowed to move within a six-block radius of DeFord's apartment over the last two and a half years. On information and belief, there are now at least nine Designated Offenders who live within a six-block radius of DeFord's current address at 2932 73rd Street. (Map available at: http://www.city-data.com/so/sexoffenders.html)

**Issiah Lairds**

40.     Lairds is a 61-year-old resident of Kenosha who pled guilty in 2004 to one count of Second-Degree Sexual Assault of a Child (Wisc. Stats. §948.02(2)). As a result of this conviction, he is a Designated Offender under the Ordinance.

41.     Lairds also has been designated as a "Special Bulletin" offender and as such is deemed a Designated Offender under the Ordinance

10

42.     For his 2004 offense, Lairds was sentenced to 10 years in prison and no probation.

43.     Lairds was released from prison in 2008 and is currently on extended supervision for the remainder of his 10-year sentence.

44.     Lairds has been homeless since June 6, 2016 when he was released from the Kenosha County jail, after serving two months for violating his extended supervision.

45.     Lairds is presently homeless because, as an SBN offender, he is unable to find any housing in Kenosha City that is compliant with the Ordinance.

46.     In his efforts to obtain housing in Kenosha, Lairds has provided his supervising agent numerous potential addresses for him to live in Kenosha, but they have all been rejected as non-compliant with the Ordinance.

47.     Lairds' supervising agent has not been able to provide him any addresses for him to reside in Kenosha that are compliant with the Ordinance and has told Laird to "keep on trying."

48.     Lairds presently lives in his car in the parking lot of the parole office in downtown Kenosha, located at 1212 60th St.

49.     Lairds' homeless status is well-known to enforcement authorities, since (1) he is legally required to register as homeless with the Wisconsin Sex Offender Registry Office; (2) his status as homeless is publicly listed on the Wisconsin State Sex Offender Registry at http://doc.wi.gov/community-resources/wi-sex-offender-registry; and (3) he has regular conversations with his supervision agent about his

11

inability to find compliant housing in Kenosha. Indeed, he is required to report in daily with her about his efforts to find such housing and where he slept the night before.

50.     Lairds is presently employed part-time at Arvato Digital Services, a packager of flash drives, located in Pleasant Prairie, Wisconsin, where he is employed as an assembly-line worker. In addition, he receives food stamps in the amount of $194 per month.

51.     Lairds lives in fear that at any time he could be forced to return to prison for being homeless.

**Kenneth Dirkson**

52.     Dirkson is a 68-year-old resident of Pleasant Prairie, Wisconsin, who pled guilty in the early 1980s to one count of Sexual Assault in Mississippi and in 1992 to one count of First-Degree Sexual Assault in Wisconsin (Wisc. Stats. 940.225(1)).

53.     Dirkson has been designated as a "Special Bulletin" offender and as such is deemed a Designated Offender under the Ordinance.

54.     For his 1992 offense, Dirkson was sentenced to 20 years in prison, plus 20 years probation.

55.     Dirkson was released from prison in October 2014.

56.     Dirkson currently has 18 more years of probation.

57.     Dirkson is handicapped and unable to walk or stand easily, suffering from diabetes, arthritis, heart disease and depression

58. Dirkson does not work; he receives social security payments in the amount of $814.00 per month, plus food stamps in the amount of $92 per month.

59. Dirkson desires to live in Kenosha because he attends church there on a twice-weekly basis (Thursday and Sunday) at the New Song Ministry, and he visits his doctors in Kenosha at least once a month. There is no public transportation in southwest Pleasant Prairie, and Plaintiff Dirkson does not own a car and cannot drive. In order for Dirkson to get to Kenosha, he must arrange his own private transportation.

60. Since his release from prison, Dirkson has sought to find housing in Kenosha by searching through newspaper advertisements, by having friends search on Craigslist, by talking to people, including his probation officer, but he has been unable to find any compliant housing,

61. As an SBN offender, it is virtually impossible for Plaintiff Dirkson to find housing in Kenosha. On at least six separate occasions, Dirkson's request for housing in Kenosha has been denied as non-compliant with the Ordinance because other Designated Offenders already live within a six-block radius of the residence.

**Alton Antrim**

62. Antrim is a 60-year-old resident of Pleasant Prairie who was found guilty in 1990 of one count of First-Degree Sexual Assault in Wisconsin (Wisc. Stats. 948.02(1)) and pled guilty in 1998 to one count of First-Degree Sexual Assault in Wisconsin (Wisc. Stats. 948.02(1)).

63. Antrim has been designated as a "Special Bulletin" offender and as

13

such is deemed a Designated Offender under the Ordinance.

64.    For his 1990 offense, Antrim was sentenced to six months in jail and six years probation.

65.    For his 1998 offense, Antrim was sentenced to 20 years in prison.

66.    Antrim served 14 years and seven months in prison for his 1998 offense and was released in July 2013, and upon his release was given four years, five months probation. Antrim's probation ends in October 2018.

67.    Antrim currently lives in Pleasant Prairie at the King's Motel and has lived there since July 2013, with a few months' interlude.

68.    Antrim pays $620.00 per month to reside at the King's Motel.

69.    Antrim does not work; he receives social security payments in the amount of $814.00 per month, plus food stamps in the amount of $91 per month.

70.    Antrim is the full-time caretaker for his wife, who has polio and cannot walk. She lives in Kenosha City in government-subsidized low-income housing.

71.    Antrim would like to live with his wife, but he cannot live with her because individuals required to register as sex offenders, such as Antrim, are prohibited from living in government-subsidized housing.

72.    Antrim also seeks to move to Kenosha City in order to be closer to his wife, but as an SBN offender, it is virtually impossible for Antrim to find housing in Kenosha.

73.    Since his release from prison, Antrim has been actively seeking to find housing in Kenosha by searching through newspaper advertisements and talking to

14

friends who have access to the internet and housing websites, but he has been unable to find any available housing anywhere in Kenosha.

74.     Every time Antrim has offered a housing suggestion in Kenosha to his probation officer (on at least five occasions) it has been rejected as non-compliant because other Designated Offenders already live within a six-block radius of the proposed residence.

### Allegations Common to All Plaintiffs

75.     Each of the Plaintiffs in this case is harmed by the Ordinance's broad restrictions on where Designated Offenders can live because the Ordinance closes off the vast majority of housing in Kenosha to Designated Offenders, thereby effectively banishing them from living anywhere in Kenosha.

76.     In particular, §11.033 (C)(1)(c)'s prohibition on Designated Offenders living within a six-block radius of one another, both alone and in combination with §11.033 (C)(1)(a) and (b)'s prohibition on Designated Offenders residing within either 500 or 2,500 feet of schools, day cares, parks or places of worship, makes it nearly impossible for Designated Offenders to find compliant housing.

77.     §11.033 (C)(1)(c)'s six-block restriction prohibits Designated Offenders from living in the same apartment building as another Designated Offender, which severely restricts their ability to find compliant housing since Designated Offenders are most likely to be able to afford to reside only in apartments or low-cost residential hotels and are rarely candidates to buy or rent single-family homes. See *In Re Taylor*, 60 Cal 4th 1019,1030 (Calif., March 2, 2015) (noting that when

15

assessing the impact of residency restrictions, the appropriate measure is not all available housing in the area, but the availability of affordable housing of the type that registrants are likely to rent: multi-family units for $850 per month or less.)

78.     The prohibition on Designated Offenders living in a six-block radius is *sui generis*. No other municipality in Kenosha County has such a restriction.

79.     Perhaps the best indication of the devastating effects of §11.033 (C)(1)(c)'s restrictions on the ability of Designated Offenders to find compliant housing in Kenosha is that, for all intents and purposes, the City of Kenosha's own policing agencies have opted not to enforce the restrictions except with regard to SBN offenders, knowing that the enforcement of the challenged restrictions would, practically speaking, preclude the City from meeting the residency needs of Designated Offenders.[5]

80.     For example, despite §11.033 (C)(1)(c)'s restrictions on Designated Offenders living within a six-block radius of one another, there are at least three apartment building in Kenosha City which house multiple Designated Offenders, including (1) 409 59th St., where at least 10 Designated Offenders reside; (2) 6011 30th Ave., where at least five Designated Offenders reside; and (3) 2204 60th St., where at least five Designated Offenders reside.

81.     The severe restrictions imposed by the six-block restriction are compounded by the prohibition on Designated Offenders living within 500' or 2,500' feet of a school, day care, park or place of worship.

---

[5]     The effect of enforcement of the challenged restrictions would be to throw many Designated Offenders into homelessness, thereby subverting public safety.

16

82.     On information and belief, there are 58 schools[6]; 92 day cares[7]; 63 parks[8]; and 50-60 churches[9] in Kenosha.

83.     These restrictions, both alone and in combination with the six-block restriction, also severely limit Designated Offenders' ability to find compliant housing.

84.     As with the six-block residency restriction, the policing agencies also often turn a blind eye to these restrictions.

85.     Plaintiff Brian Cowan's situation is typical, since, as explained in ¶21 above, Cowan's current residence is located within one block from a church (*e.g.*, the Reformation Church, located at 1920 52nd St.) and one block from a school (*e.g.*, Friedens Elementary, located at 5038 19th Ave.) but the compliance agencies have turned a blind-eye to his residence being non-compliant with the Ordinance.

86.     In general, the City's enforcement agencies opt to enforce the restrictions in an arbitrary and capricious manner.

---

[6]     See, http://kc-web-01.kenoshacounty.org/InteractiveMapping

[7]     See, http://childcarefinder.wisconsin.gov/Search/SearchResults.aspx?q=FF-F0-DC-9E:MHwwfHx8fEtFTk9TSEF8fDMwfFRydWV8VHJ1ZXxUcnVlfFRydWV8VHJ1ZXxUcnVlfFRydWV8VHJ1ZXxUcnVlfFRydWV8VHJ1ZXxUcnVlfFRydWV8VHJ1ZXxUcnVlfFRydWV8LTF8LTF8RmFsc2V8MnxifDB8MHx8ZHxGYWxxzZXwwfEZhbHNl

[8]     See, http://kc-web-01.kenoshacounty.org/InteractiveMapping

[9]     See, https://www.google.com/#q=places+of+worship+kenosha+wi&rflfq=1&rlha=0&rllag=42575956,-87848059,2330&tbm=lcl&tbs=lf:1,lf_ui:1

87. As a result, individuals live in constant terror of being found in violation of the residency restrictions and forced into homelessness and/or being forced to go back to prison.

88. All of the Plaintiffs are subject to the irrational difference in treatment between offenders who are placed in their housing by the department of corrections and those who find their own housing.

## COUNT I
## VIOLATION OF THE EX POST FACTO CLAUSE
### (*Monell* Express Policy Claim For Declaratory and Injunctive Relief and Money Damages)

89. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

90. The Ordinance violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to enactment of the Ordinance and it applies retroactively—that it applies to all individuals deemed "Designated Offenders" who committed their offenses before enactment of the Ordinance.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) issue a preliminary and then permanent injunction prohibiting retroactive enforcement of the Ordinance;

(b) issue a declaratory judgment that states that retroactive application of the Ordinance violates the prohibition in the United States Constitution against ex post facto laws;

(c) award Plaintiffs nominal and/or compensatory damages;

(d) enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

18

(e)      grant Plaintiffs any other relief the Court deems appropriate.

**COUNT II**
**42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION**
**(*Monell* Express Policy Claim For Declaratory and**
**Injunctive Relief and Money Damages)**

91.      Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

92.      The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which the Supreme Court has explained means that "all persons similarly situated should be treated alike" unless the difference in treatment is "rationally related to a legitimate state interest."

93.      Sections 11.033 (C)(1)(a) and (b) of the Ordinance distinguish how far a Designated Offender must live from Prohibited Locations depending on whether the offender was placed by the DOC or not—requiring those placed by DOC to live 500' from Prohibited Locations and those not placed by DOC to live 2,500' from Prohibited Locations.

94.      The difference in treatment between Designated Offenders who were placed by DOC and Designated Offenders who found their own housing is not rationally related to a legitimate state interest and thus fails rational basis review.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)      issue a preliminary and then permanent injunction prohibiting
         enforcement of §11.033 (C)(1)(a) and (b) of the Ordinance;

(b)     issue a declaratory judgment that §11.033 (C)(1)(a) and (b) of the Ordinance is unconstitutional both on its face and as applied to Plaintiffs;

(c)     award Plaintiffs nominal and/or compensatory damages;

(d)     enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

(e)     grant Plaintiffs any other relief the Court deems appropriate.

## COUNT III
## 42 U.S.C. § 1983: FOURTEENTH AMENDMENT DUE PROCESS
### (*Monell* Express Policy Claim For Declaratory and
### Injunctive Relief and Monetary Damages)

95.     Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

96.     The prohibitions set forth in §11.033 (B)(6) (defining "Prohibited Locations" to include "place[s] of worship") and §11.033 (C)(1)(c) (prohibiting Designated Offenders from living within six blocks of any other Designated Offender) are not rationally related to a legitimate state interest and thus fails rational basis review.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     issue a preliminary and then permanent injunction prohibiting enforcement of §11.033 (B)(6)'s prohibition on Designated Offenders living within 500' or 2,500' of a place of worship and §11.033 (C)(1)(c)'s prohibition on Designated Offenders from living within six blocks of any other Designated Offender.

(b)     issue a declaratory judgment that §§11.033 (B)(6) and (C)(1)(c) of the Ordinance are unconstitutional both on their face and as applied to Plaintiffs;

(c)     award Plaintiffs nominal and/or compensatory damages;

(d)     enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

(e)     grant Plaintiffs any other relief the Court deems appropriate.

## COUNT IV
## 42 U.S.C. § 1983: FOURTEENTH AMENDMENT
## PROCEDURAL DUE PROCESS
## (Monell Express Policy Claim For Declaratory and Injunctive Relief)

98.     Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

99.     The Due Process Clause of the Fourteenth Amendment prohibits the enforcement of laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient clarity that persons of ordinary intelligence need not guess at their meaning.

100.     Section 11.033(B)(6)'s restriction on Designated Offenders living within 500' or 2500' of "any other place designated by the City as a place where children are known to congregate" is invalid under the vagueness doctrine because this provisions fails to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for the Plaintiffs to conform their conduct to the statutory requirements and making it likely that law enforcement officials will enforce the statutes in different ways in different places or against different people.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)     issue a preliminary and then permanent injunction prohibiting enforcement of §11.033 (B)(6)'s prohibition on Designated Offenders

21

living within 500' or 2,500' of "any other place designated by the City as a place where children are known to congregate";

(b)     issue a declaratory judgment that §11.033 (B)(6) of the Ordinance is unconstitutional both on its face and as applied to Plaintiffs;

(c)     award Plaintiffs nominal and/or compensatory damages;

(d)     enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

(e)     grant Plaintiffs any other relief the Court deems appropriate.


**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Mark G. Weinberg

/s/ Adele D. Nicholas
*Counsel for Plaintiff*

Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913

Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869

22